IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EMERICE DEWAYNE SEAGLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:15-cv-00538-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

The plaintiff, Emerice D. Seagle, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Mr. Seagle timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Seagle was forty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education. (Tr. at 28.) He has a sporadic work history, having worked as a painter from about 1995 to 2001 and then not working again until 2007 for about a year as a general laborer. (Tr. at

48, 166, 173). Plaintiff also has subsequent work activity selling drugs (tr. at 49), and he reported having done some painting work as recently as 2011 or 2012. (Tr. at 41). He stopped working at his last job as a general laborer primarily for a reason unrelated to his medical conditions. (Tr. at 49, 165). He reported that the company he worked for went out of business (tr. at 49), and that he did not have a place to live and had a drug problem. (Tr. at 165). Mr. Seagle claims that he became disabled on January 1, 2000, due to panic attacks, depression, numbness in his hands, and shortness of breath. (Tr. at 41, 45-46, 49-51, 128-33, 161, 165.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's

residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Seagle has not engaged in SGA since the alleged onset of his disability. (Tr. at 23.) According to the ALJ, Plaintiff's bilateral carpal tunnel syndrome and generalized anxiety disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. (*Id.*) The ALJ did not find Mr. Seagle's allegations to be totally credible, and he determined that he has the following RFC: he can perform light work as defined in 20 C.F.R. § 416.976 (b) except he cannot climb ladders, ropes or scaffolds; he can frequently perform fine and gross manipulation bilaterally; he can do simple, routine, and repetitive tasks in a low stress environment, which is defined as requiring only occasional decision making and having occasional changes in the work setting; and he can have occasional interaction with coworkers, but he cannot interact with the public. (Tr. at 25.)

According to the ALJ, Mr. Seagle is unable to perform any of his past relevant work, he is a "younger individual," he has a "limited education," and he is able to communicate in English, as those terms are defined by the regulations. (Tr. at 28.) He determined that "transferability of job skills is not material to the determination of disability." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 201.25 as a guideline for finding that there are still a significant number of jobs in the national economy that he is capable of performing, such as polisher, bagger, and stuffer. (Tr. at 28-29.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social

Security Act, since June 22, 2012, the date the application was filed (20 CFR 416.920 (g))." (Tr. at 29.)

## II.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III.   Discussion**

Mr. Seagle alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ failed to apply the "*Brady* standard" in concluding that his dysthymic disorder was not a severe impairment. (Doc. 9 at 5.) Second, Plaintiff contends that the ALJ did not afford proper consideration to his subjective complaints of pain. (*Id.*)

**A.   Finding Dysthymic Disorder Non-Severe**

Plaintiff contends that the ALJ improperly found his dysthymic disorder to be non-severe at step two of the sequential evaluation process by failing to apply the "*Brady* standard" in making the conclusion. (Doc. 9. at 3.) In support, the plaintiff alleges that the Eleventh Circuit requires assessment of determining the severity at step two by using the *Brady* standard or "slight abnormality" standard. (Doc. 9. at 6.) In *Brady v. Heckler*, the Eleventh Circuit noted, "An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 724 F.2d, 914, 920 (11th Cir. 1984). However, Plaintiff's reliance on *Brady* is misplaced.

The purpose of step two of the sequential evaluation process is to determine if the claimant has *any* severe impairment. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Step two is thus a threshold step that can be satisfied by the finding of any one severe impairment. *See id.* If a severe impairment is not found, then the claim is denied. *Id.* The Eleventh Circuit has stated, "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," as long as the ALJ considers all of the claimant's impairments in combination. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir.

8

2010). Thus, the Eleventh Circuit has repeatedly found that the ALJ does not commit reversible error by incorrectly finding an impairment non-severe as long as the ALJ has found at least one impairment severe and considers all of the claimant's impairments (severe and non-severe) during the rest of his evaluation. *See, e.g.*, *Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914-915 (11th Cir. 2014); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950-52 (11th Cir. 2014); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902-93 (11th Cir. 2011).

In the present case, the ALJ found Plaintiff had severe impairments of bilateral carpal tunnel syndrome and generalized anxiety disorder. (Tr. at 23). By finding at least one impairment severe at step two, the ALJ found in Plaintiff's favor at step two and proceeded with the sequential evaluation process. Thus, it is irrelevant whether Plaintiff's dysthymic disorder meets the *Brady* test for a severe impairment. *Tuggerson-Brown*, 572 F. App'x at 951 ("even assuming that *Tuggerson–Brown* is correct that her additional impairments were "severe," the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below").

Importantly, although the ALJ did not find Plaintiff's dysthymic disorder severe, the ALJ proceeded to consider Plaintiff's dysthymic disorder throughout the rest of the sequential process. At step three, the ALJ evaluated all of Plaintiff's

9

impairments in combination when he stated that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. at 23.) The ALJ also considered all of Plaintiff's impairments in combination when he stated that he considered "all symptoms" in determining Plaintiff's RFC. (Tr. at 25.) Under Eleventh Circuit precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence. *Tuggerson-Brown*, 572 F. App'x at 951 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)). Plaintiff has failed to show that the ALJ erred at step two of the evaluation.

In any event, Plaintiff has not demonstrated how his dysthymic disorder would prevent him from performing work with the mental limitations the ALJ found as part of Plaintiff's RFC. The manifestation of depression by itself does not prevent Plaintiff from working. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (the mere existence of an impairment does not reveal the extent to which it limits the ability to work); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (permanent impairment does not necessarily mean an inability to do any work). The ALJ's RFC finding for the plaintiff limits him to work with few mental requirements; namely, Plaintiff can limit his work to simple, routine, and repetitive tasks in a low-stress environment that only involves occasional decision-making.

(Tr. at 25.) The ALJ also restricted Plaintiff's interactions with others to no interaction with the public and only occasional interaction with coworkers. (Tr. at 25.) There is substantial evidence in the record to support the ALJ's RFC determination as to Plaintiff's mental abilities, such as Plaintiff's ability to continue daily activities, his lack of mental health treatment over time, and his lack of consistent complaints of mental problems, as discussed in more detail *infra*. (Tr. at 26-27, 40-41, 52-53, 181-85.)

### B. Credibility Determination

Plaintiff also asserts that the ALJ erred in discrediting his testimony of disabling pain. To determine disability based upon subjective symptoms, such as pain, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant has satisfied the Eleventh Circuit's "pain standard," the ALJ must still evaluate the credibility of a claimant's statements. *See* 20 C.F.R. § 416.929(a), (c); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186; *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). A claimant's testimony

regarding his symptoms are only considered if the testimony is found to be credible. *See* SSR 96-7p, 1996 WL 374186, at *4 ("the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements"). As the Eleventh Circuit recently reiterated in *Mitchell v. Commissioner*, 771 F.3d 780, 782 (11th Cir. 2014), credibility determinations are the province of the ALJ, and courts will not disturb a clearly articulated credibility finding supported by substantial evidence.

It is thus entirely acceptable for the ALJ to discredit the claimant's subjective testimony as long as he articulates explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *see also* SSR 96-7p, 1996 WL 374186 ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). The reasons that are given by the ALJ for discrediting the claimant's testimony of pain and other subjective symptoms must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Although the ALJ does not have to cite to specific "phrases or formulations," the proposition that the claimant's statements are not credible must be obvious to the reviewing court. *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67

F.3d at 1562). In other words, the ALJ's credibility determination cannot be a "broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* (internal quotations omitted).

In the present case, the ALJ found that the plaintiff satisfied the pain standard, but he did not believe that the plaintiff's statements met the second prong of credibility as his statements about the intensity, persistence, duration, and impact on performance of his complained-of symptoms did not conform with the totality of evidence. (Tr. at 26.) The ALJ cited specific reasons for his credibility finding, and substantial evidence supports his finding.

First, the ALJ noted Plaintiff's failure to receive recent medical treatment for his complained-of impairments weakens the credibility of his allegations of disabling symptoms and pain. (Tr. at 27.) Mr. Seagle made allegations of disabling anxiety and carpal tunnel syndrome symptoms, but medical records reflect that he received minimal medical treatment for those symptoms and pain, which suggests that Mr. Seagle's impairments must not be as severe as he claimed them to be. *Id.* The ALJ noted that plaintiff had long periods when he went without treatment. (Tr. at 26.) For instance, Mr. Seagle reported growing anxiousness and irritability in October 2011, but he did not complain of those symptoms again until September

22, 2012, and sought very little treatment subsequent to October 2011. (*Id.*) Plaintiff had gaps in treatment for a year at a time, and when he was treated, it was limited to medication and a brace for his wrists. (Tr. at 26, 226-58.) *See Dyer*, 395 F.3d at 1211 (ALJ properly discounted claimant's complaints of disabling pain where pain had not required routine or consistent treatment, the claimant often went for months or years between complaining of pain to his physicians, and the claimant's treatment was limited to medication); *Wilson*, 284 F.3d at 1226 (substantial evidence supported ALJ's rejection of claimant's complaints where claimant had limited treatment and did not complain of pain).

Furthermore, the ALJ noted that the plaintiff had normal results in his mental status examinations. A consultative examination revealed that he had no findings of euthymic mood, impairments of memory or cognition, or high irritability, sleep disturbance, or emotional labiality, despite the plaintiff alleging social phobia and anxiety. (Tr. at 26, 229, 251.) *See* SSR 96-7p, *5 ("One strong indication of the credibility of an individual's statements is their consistency . . . with other information in the case record. The adjudicator must consider such factors as . . . [t]he degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources . . . .").

The ALJ also noted that Plaintiff's participation in daily activities undermined his assertion of disabling pain. Plaintiff reportedly made simple meals, took care of himself, completed household chores, did yard work, drove a car, and watched television. (Tr. at 27, 40-41, 52-53, 181-85.) The ALJ made a finding that an individual with the alleged physical and mental impairments that the Plaintiff reported would not be able to do such "strenuous and extensive" activities. (Tr. at 27.) The ALJ also noted that Plaintiff did not stop working due to his physical and mental conditions, but rather quit work because he had an issue with drugs, did not a have a place to live that was near his work, and the company that he worked for closed. (Tr. at 27, 49, 165.) *See Kemp v. Astrue*, 308 F. App'x 423, 428 (11th Cir. 2009) (that claimant stopped working because her plant shut down supported ALJ's credibility assessment).

The only issue Plaintiff raises with the ALJ's credibility determination is the fact that the ALJ allowed Plaintiff's reported activities of daily living to undermine his credibility. Specifically, Plaintiff challenges the ALJ's finding based on the ALJ's description of his daily activities as "strenuous and extensive." (Doc. 9 at 10-12.) Whether or not the ALJ appropriately characterized Mr. Seagle's participation in his daily activities, it was nonetheless proper for the ALJ to have relied on his reported daily activities as one factor to discredit his statements of

disabling pain. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all."); *Harrison v. Comm'r Soc. Sec.,* 569 F. App'x 874, 880 (11th Cir. 2009) (finding that Plaintiff's daily activities of managing her personal care, preparing meals, shopping, caring for pets, watching television, driving a car, using a computer, and socializing with friends and neighbors supported ALJ's credibility determination).

Further, even without the ALJ's consideration of Plaintiff's daily activities, there was ample evidence undermining Plaintiff's credibility, as discussed above, such as Plaintiff's limited and conservative medical treatment, normal examination findings, and poor work history. Plaintiff does not challenge the ALJ's use of any of that evidence. Thus, any error related to the ALJ's characterization of Plaintiff's daily activities as "strenuous and extensive" is harmless as it does not undermine the substantial evidence supporting his credibility assessment. *See Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 859-60 (11th Cir. 2012) (court's review of the record showed there was sufficient evidence to support an adverse credibility determination independent of erroneous statement by ALJ, thus, any error in that

regard was harmless). In sum, because a reasonable person could conclude based on the record that Plaintiff's statements were not fully credible, the ALJ's credibility finding is due to be affirmed. *See Foote*, 67 F.3d at 1561.

## IV.  Conclusion

Upon review of the administrative record, and considering all of Mr. Seagle's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON APRIL 22, 2016.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704